**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| DANIEL TEPPER, individually and on Behalf of all others similarly situated, | ) | Civil Action No. 1:24-cv-2055 |
| Plaintiff, | ) | CLASS ACTION COMPLAINT |
| v. | ) | JURY TRIAL DEMANDED |
| THE QUAKER OATS COMPANY, | ) | |
| Defendant. | ) | |

Plaintiff Daniel Tepper ("Plaintiff"), by and through his counsel, on his own behalf and on behalf of all others similarly situated, brings this Class Action Complaint against The Quaker Oats Company ("Quaker Oats" or "Defendant") for its materially false and deceptive manufacturing, marketing, and sale of oat-based products (the "Products")[1] containing the toxic and dangerous chemical pesticide known as chlormequat chloride ("chlormequat"), and alleges the following facts in support of his claims against Defendant based upon personal knowledge, where applicable, information and belief, and the investigation of counsel:

## I. INTRODUCTION

1. Defendant has improperly and misleadingly packaged and marketed its Products to reasonable consumers, like Plaintiff, regarding the presence or risk of chlormequat in the Products. Chlormequat is a harmful chemical, and its consumption carries a risk of adverse health impacts to the consumer. Defendant omits from the Products' packaging that they contain (or are at a risk of containing) chlormequat.

[1] The Products include, at this time, Quaker Old Fashioned Oats, Quaker Instant Oatmeal Maple & Brown Sugar, Quaker Oatmeal Squares Honey Nut, Quaker Oatmeal Squares Brown Sugar, Quaker Simply Granola Oats Honey & Almond, and Quaker Chewy Dark Chocolate Chunk snack bar. Plaintiff reserves the right to add other products at a later as appropriate.

2. Chlormequat is a plant growth regulator used on grain crops that stops plants from bending over. A recent peer-reviewed study (the "Study") by the Environmental Working Group ("EWG"), published in the Journal of Exposure & Environmental Epidemiology, showed the presence of chlormequat in certain oat-based foods, including the Products.[2]

3. For example, the Study found the following amounts of chlormequat, measured in parts per billion ("ppb"), in the Products:

- Quaker Oats Old Fashioned Oats: 291 ppb (June 2022); 209 ppb (May 2023);
- Quaker Oats Instant Oatmeal Maple & Brown Sugar: 170 ppb (August 2022); 112 ppb (May 2023);
- Quaker Oats Oatmeal Squares Honey Nut: 160 ppb (June 2022); 189 ppb (May 2023);
- Quaker Oats Oatmeal Squares Brown Sugar: 90 ppb (August 2022); 199 ppb (May 2023);
- Quaker Oats Simply Granola Oats Honey & Almond: 70 ppb (August 2022); 69 ppb (May 2023); and
- Quaker Oats Chewy Dark Chocolate Chunk snack bar: 80 ppb (August 2022); 60 ppb (May 2023).[3]

[2] https://www.nature.com/articles/s41370-024-00643-4?utm_medium=affiliate&utm_source=commission_junction&utm_campaign=CONR_PF018_ECOM_GL_PHSS_ALWYS_DEEPLINK&utm_content=textlink&utm_term=PID100093539&CJEVENT=6e2ac7fad4d611ee836e69fe0a82b824 (last visited Feb. 26, 2024).

[3] *Id.*, Table S-2.

4. Disturbingly, though, according to EWG, "the chemical is linked to reproductive and developmental problems in animal studies," which suggest "similar harm to humans."[4] Because of the potential for health risks due to its consumption, EWG's suggested health benchmark for chlormequat is 30 ppb.[5] As shown above, all of the Products had levels higher than that benchmark.

5. According to EWG, "The ubiquity of this little-studied pesticide in people raises alarm bells about how it could potentially cause harm without anyone knowing they've consumed it."[6]

6. However, good manufacturing practices do not require the use of chlormequat in processing and packaging these types of Products. Organic products that were tested did not contain detectable levels of chlormequat, including 365 Whole Foods Market Organic Chocolate Chip Chewy Granola snack bar, 365 Whole Foods Market Organic French Vanilla Granola, 365 Whole Foods Market Organic Old Fashioned Rolled Oats, Simple Truth Organic Instant Oatmeal Maple & Brown Sugar, Simple Truth Organic Oats & Honey Granola Clusters, and even Quaker Oats' own Instant Oatmeal Organic Maple & Brown Sugar.[7]

---

[4] https://www.ewg.org/news-insights/news-release/2024/02/new-peer-reviewed-ewg-study-finds-little-known-toxic-crop (last visited Feb. 26, 2024); *see also* https://www.ewg.org/research/ewg-investigation-dangerous-agricultural-chemical-chlormequat-found-popular-oat-based#:~:text=This%20level%20%E2%80%93%20EWG's%20health%20benchmark,on%20a%20typical%20serving%20size (studies cited therein) (last visited Feb. 26, 2024).

[5] *See* https://www.ewg.org/research/ewg-investigation-dangerous-agricultural-chemical-chlormequat-found-popular-oat-based#:~:text=This%20level%20%E2%80%93%20EWG's%20health%20benchmark,on%20a%20typical%20serving%20size (last visited Feb. 26, 2024).

[6] https://www.ewg.org/news-insights/news-release/2024/02/new-peer-reviewed-ewg-study-finds-little-known-toxic-crop (last visited Feb. 26, 2024).

[7] *See* https://www.nature.com/articles/s41370-024-00643-4?utm_medium=affiliate&utm_source=commission_junction&utm_campaign=CONR_PF018_ECOM_GL_PHSS_ALWYS_DEEPLINK&utm_content=textlink&utm_term=PID100093539&CJEVENT=6e2ac7fad4d611ee836e69fe0a82b824, Table S-2 (last visited Feb. 26, 2024).

7. Reasonable consumers, like Plaintiff, trust manufacturers like Defendant to sell food that is free from harmful toxins, contaminants, and chemicals. Reasonable consumers, like Plaintiff, certainly expect the food they eat and feed their family to be free from chlormequat, a substance with the risk of adverse health consequences. If such substances are contained in (or risk being contained in) the food sold by a manufacturer, reasonable consumers expect that this will be disclosed on the products' packaging so that they can have full and fair information to decide for themselves whether to consume the product and at what amount, if any.

8. Consumers lack the scientific knowledge necessary to determine whether the Products do in fact contain (or have a risk of containing) chlormequat, or to ascertain the true nature of the quality of the Products. Reasonable consumers therefore must and do rely on Defendant to be transparent and properly disclose on the packaging all material information regarding the Products and their safety and not to misrepresent the nature and qualities of the Products.

9. Yet, nowhere on the Products' packaging is there any disclosure of the inclusion (or risk) of chlormequat.

10. Defendant's website confirms that it knows and understands that consumers consider eating nutritious, safe, and healthy foods to be important. In fact, Defendant's website contains a page entitled, "Health & Nutrition," where it states that Quaker Oats and Oatmeals are "Delicious and nutritious to help support your healthy lifestyle."[8]

11. The website also touts the purportedly high standards to which Defendant adheres, stating the following under the heading, "The Quaker Standard":

---

[8] https://www.quakeroats.com/extraordinary-oats/keep-your-heart-healthy (last visited Feb. 26, 2024).

> "2017 marks 140 years of The Quaker Oats Company. Our success and leadership follows a commitment to a level of excellence we call 'The Quaker Standard', a practice that transcends our entire supply chain. This has led us to invest in world-class, industry-leading science, technology and talent. The result—an unsurpassed ability to transform the oat into products that allow people to benefit from their goodness. We work hard to advance the oat to its fullest potential so we can help people reach their fullest potential. Of course, we also take pride in making the best darn oatmeal every morning."[9]

12. The website further assures consumers that "[i]t is clear that scientists have only scratched the surface on the potential of oats. The Quaker Oats Center of Excellence aims to study and discover the benefits of oats through scientific investigations, agricultural science and great-tasting, nutritious innovations."[10]

13. Moreover, every package of Quaker Oats Products contains the icon of a Quaker.




14. As explained on the website, in 1877, "Quaker Oats registered as the first trademark for a breakfast cereal. The trademark was registered with the U.S. Patent Office as 'a figure of a man in 'Quaker garb.'' Both former owners, Henry Seymour and William Heston, claimed to have

[9] https://www.quakeroats.com/oats-do-more/why-oats/our-oat-story (last visited Feb. 26, 2024).
[10] https://www.quakeroats.com/about-quaker-oats/quaker-oats-center-of-excellence/explore-the-power-of-the-oat (last visited Feb. 26, 2024).

selected the Quaker name as a symbol of good quality and honest value."[11] Thereafter, in 1881, "Henry Parsons Crowell buys the bankrupt Quaker Mill in Ravenna, OH, and its most important asset – the brand name Quaker."[12] Thus, the very essence of the company revolves around "good quality and honest value."[13]

15. But despite the icon of the trusted Quaker, and the marketing of the Products as healthy, nowhere does Defendant disclose on the packaging the presence (or risk) of toxic chlormequat in the Products.

16. Plaintiff brings this class action against Defendant for deceptive business practices, as well as for unjust enrichment, due to the presence (or risk) of dangerous chlormequat in the Products, including those that Plaintiff purchased. Plaintiff seeks injunctive and monetary relief on behalf of the proposed Class including (i) requiring full disclosure of all such substances in Defendant's marketing, advertising, and packaging; (ii) requiring testing for such substances; and (iii) restoring monies to Plaintiff and the members of the proposed Class(es) as defined below.

## II. PARTIES

***Plaintiff***

17. Plaintiff Daniel Tepper is a citizen and resident of the State of New York. During the applicable statute of limitations period, Plaintiff purchased in New York several of the Products, including the Quaker Instant Oatmeal Maple & Brown Sugar and the Quaker Oats Oatmeal Squares Brown Sugar that were manufactured and produced by Defendant that contained (or were at risk of containing) undisclosed dangerous chlormequat. He paid up to the regular retail price for the Products. Plaintiff relied on the packaging in making his purchase, was unaware that

---

[11] https://www.quakeroats.com/about-quaker-oats/quaker-history (last visited Feb. 26, 2024).
[12] *Id.*
[13] *Id.*

the Products contained (or risked containing) chlormequat and would not have purchased the Products if that were fully disclosed or he would have paid less than he did. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff was injured when he paid the purchase price and/or a price premium for the Products that did not deliver what Defendant promised. Plaintiff paid the above sum in reliance that the packaging of the Products was accurate and that there were no material omissions. Plaintiff would purchase the Products again if Defendant (i) eliminated the chlormequat; and/or (ii) undertook corrective changes to the packaging. Damages can be calculated through expert testimony at trial.

***Defendant***

18. Defendant Quaker Oats is an Illinois corporation with a principal place of business in Chicago, Illinois.

19. Defendant packages, labels, markets, advertises, formulates, manufactures, distributes, and sells the Products throughout the United States, including New York, California, Illinois, Michigan, Missouri, and New Jersey.

20. Defendant's website is https://www.quakeroats.com/.

## III. JURISDICTION AND VENUE

21. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d)(2), because at least one Class Member is of diverse state citizenship from Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

22. The Northern District of Illinois has personal jurisdiction over Defendant as Defendant conducts substantial business in this District and has its principal place of business in this District.

23. Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant has its principal place of business in this District and because a substantial part of the events giving rise to the conduct alleged in this Complaint occurred in, were directed to, and emanated from this District.

## IV. CLASS ACTION ALLEGATIONS

24. Pursuant to the provisions of Rules 23(a), 23(b)(2), 23(b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of himself and a multi-state Class defined as:

> **All persons who, during the applicable statute of limitations period to the present, purchased the Products in New York, California, Illinois, Michigan, Missouri, and New Jersey for personal and/or household use, and not for resale (the "Multi-State Class").**

25. In the alternative, pursuant to the provisions of Rules 23(a), 23(b)(2), 23(b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of himself and a New York Subclass defined as:

> **All persons who, during the applicable statute of limitations period to the present, purchased the Products in New York for personal and/or household use, and not for resale (the "New York Subclass").**

26. The Multi-State Class and the New York Subclass are collectively referred to as the "Class." The Class excludes Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

27. Certification of Plaintiff's claims for class-wide treatment is appropriate because all elements of Fed. R. Civ. P. 23(a), (b)(2)-(3), as well as 23(c)(4), are satisfied. Plaintiff can prove the elements of his claim on a class-wide basis using the same evidence as would be used to prove those elements in an individual action alleging the same claims.

28. **Numerosity:** All requirements of Fed. R. Civ. P. 23(a)(l) are satisfied. The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are thousands of members of the Class, the precise number of Class members is unknown to Plaintiff. Plaintiff believes that the identity of Class members is known or knowable by Defendant or can be discerned through reasonable means. Class members may be identified through objective means. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

29. **Commonality and Predominance:** All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

a. whether Defendant engaged in the deceptive and misleading business practices alleged herein;

b. whether the omissions by Defendant were likely to deceive a reasonable consumer;

c. whether Defendant knew or should have known that the Products contain (or risk containing) toxic chlormequat;

d. whether Defendant failed to disclose that the Products contain (or risk containing) toxic chlormequat;

e. whether Defendant was unjustly enriched by its actions;

f. whether the omitted facts are material to a reasonable consumer;

g. whether Plaintiff and members of the Class were injured and suffered damages;

h. whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief; and

i. whether Plaintiff and members of the Class are entitled to damages and, if so, the measure of such damages.

30. **Typicality:** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiff is a member of the Class, having purchased for personal/household use the Products that were manufactured by Defendant. Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's conduct.

31. **Adequacy of Representation:** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiff is an adequate Class representative because he is a member of the Class and his interests do not conflict with the interests of the other members of the Class that he seeks to represent. Plaintiff is committed to pursuing this matter for the Class with the Class' collective best interests in mind. Plaintiff has retained counsel competent and experienced in complex class action litigation of this type, and Plaintiff intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the Class' interests.

32. **Predominance and Superiority:** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiff's individual case will also resolve them for the Class' claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense

that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

33. **Cohesiveness:** All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Defendant has acted, or refused to act, on grounds generally applicable to the Class, making final declaratory or injunctive relief appropriate.

## V. CAUSES OF ACTION

### COUNT I
### Violations of Multiple State Consumer Fraud and Deceptive Business Practice Laws
### (On Behalf of Plaintiff and the Multi-State Class)

34. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 33 as though fully set forth herein.

35. Plaintiff brings this Claim individually and on behalf of other members of the Multi-State Class defined above.

36. The Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, *et seq.*, the "Act"), prohibits unfair or deceptive acts or practices in connection with any trade or commerce, including, among other things, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, … whether any person has in fact been misled, deceived, or damaged thereby." The Act also prohibits suppliers from representing that their goods are of a particular quality or grade that they are not.

37. Defendant's omissions constitute unfair competition or unfair, unconscionable, deceptive, fraudulent, or unlawful acts or business practices in violation of the Act and the following State consumer protection statutes, which are materially similar to the Act: the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; the New York Consumer Law for Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, and New York Consumer Law for False Advertising, N.Y. Gen Bus. Law § 350; the Michigan Consumer Fraud Act, Mich. Stat. § 445.901 *et seq.*; the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.*; and the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.* (collectively with the Act, the "State Statutes").

38. Plaintiff and the members of the Multi-State Class are consumers within the meaning of the State Statutes.

39. Defendant's unfair and deceptive practices took place in the course of trade and commerce.

40. As discussed above, Defendant's Products contain (or risk containing) dangerous chlormequat. Defendant knew or should have known that its Products contained (or risked containing) dangerous chlormequat but made material omissions regarding these facts on its packaging for the Products.

41. Plaintiff and the Multi-State Class would not have purchased the Products at issue had they known the truth about the presence (or risk) of dangerous chlormequat, or they would have paid less than they did for the Products.

42. Defendant violated the State Statutes by making material omissions regarding the presence (or risk) therein of dangerous chlormequat.

43. If Defendant had not sold the Products containing (or risking containing) dangerous chlormequat, Plaintiff and the members of the Multi-State Class would not have suffered the extent of damages caused by Defendant's sales.

44. Defendant's practices, acts, policies, and course of conduct violate the State Statutes in that, among other things, Defendant knowingly made material omissions on its packaging for the Products to Plaintiff and the Multi-State Class at the time they purchased the Products, including the fact that Defendant's products contained (or risked containing) dangerous chlormequat.

45. The aforementioned conduct constitutes an unconscionable commercial practice.

46. Defendant had a duty to disclose these material facts because it had exclusive knowledge of material facts not known to Plaintiff or other consumers and it actively concealed material facts from Plaintiff and other consumers.

47. Defendant intended for Plaintiff and the members of the Multi-State Class to rely on these deceptive and unfair practices when Plaintiff and the Multi-State Class purchased Products.

48. Members of the public, including Plaintiff and the members of the Multi-State Class, were deceived by Defendant's material failures to disclose.

49. Such acts and practices by Defendant are and were likely to mislead a reasonable consumer purchasing the Products from Defendant. Said acts and practices are material as described hereinabove.

50. As a direct and proximate cause of Defendant's conduct, Plaintiff and the Multi-State Class members suffered damages as alleged above. Pursuant to the State Statutes, Plaintiff individually, and members of the Multi-State Class, are entitled to recover costs and reasonable attorneys' fees in this action to the extent available. Plaintiff also seeks declaratory and injunctive relief as described herein.

51. In addition to or in lieu of actual damages, because of the injury, Plaintiff and the Multi-State Class members seek statutory damages and/or punitive damages for each injury and violation which has occurred, as available under the State Statutes.

52. Pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*, Plaintiff currently only seeks injunctive and declaratory relief under that statute pending notice under the statute to Defendant and the 30-day statutory period.

**COUNT II**
**In the alternative to Count I, Violations of the New York Consumer Law for Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349**
**(On behalf of the New York Subclass)**

53. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 33 as though fully set forth herein.

54. Plaintiff brings this Claim individually and on behalf of other members of the New York Subclass defined above.

55. New York General Business Law ("GBL") § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

56. In its advertising and sale of goods throughout New York, Defendant conducts business and trade within the meaning of GBL § 349.

57. Defendant violated GBL § 349 by deceptively and misleadingly omitting that the Products contained (or risked containing) dangerous chlormequat.

58. Defendant's omissions, concealment, and other deceptive conduct described herein were directed at the consumer public at-large as they repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

59. The facts concealed or not disclosed by Defendant were material facts in that Plaintiff and the New York Subclass, and other reasonable consumers, would have considered them important in deciding whether to purchase the Products. Had Plaintiff and members of the New York Subclass known the Products contained (or risked containing) chlormequat, they would not have purchased the Products or paid a premium price.

60. Defendant alone possessed the information that was material to Plaintiff and the New York Subclass and failed to disclose such material information to consumers.

61. Defendant has engaged and continues to engage in deceptive conduct in violation of GBL § 349.

62. Defendant's omissions and other deceptive conduct caused Plaintiff and the New York Subclass to suffer injury in the form of actual damages when they purchased the Products that were worth less than the price paid and that they would not have purchased at all had they known the Products contained (or risked containing) dangerous chlormequat.

63. Defendant intended for Plaintiff and the New York Subclass to rely on its omissions, concealment, and other deceptive conduct regarding the Products when purchasing the Products, unaware of the undisclosed material facts.

64. Defendant knowingly made material omissions on its packaging for the Products to Plaintiff and the New York Subclass at the time they purchased the Products, including the fact that Defendant's products contained (or risked containing) dangerous chlormequat.

65. As a direct and proximate result of these violations, Plaintiff and the New York

Subclass have been harmed, and that harm will continue until Defendant is enjoined from further omitting the truth about the Products, that they contain (or risk containing) dangerous chlormequat.

66. Pursuant to GBL § 349(h), Plaintiff, on behalf of himself and the New York Subclass, seeks injunctive and declaratory relief, as well as actual damages or $50 (whichever is greater), and statutory damages of three times the actual damages (up to $1,000) due to Defendant's willful and/or knowing violations, and attorneys' fees.

**COUNT III**
**In the alternative to Count I, Violations of the New York Consumer Law for False Advertising, N.Y. Gen Bus. Law § 350**
**(On behalf of the New York Subclass)**

67. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 33 as though fully set forth herein.

68. Plaintiff brings this Claim individually and on behalf of other members of the New York Subclass defined above.

69. New York GBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

70. Pursuant to GBL § 350-a.1., false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations…."

71. Defendant knew or should have known that the Products contained (or risked containing) dangerous chlormequat, a fact nowhere disclosed on the packaging of the Products.

72. Defendant purposely concealed and did not disclose material facts regarding the presence (or risk) of dangerous chlormequat to consumers, including Plaintiff and the New York Subclass.

73. The facts concealed or not disclosed by Defendant were material facts in that Plaintiff and the New York Subclass, and other reasonable consumers, would have considered them important in deciding whether to purchase the Products. Had Plaintiff and members of the New York Subclass known the Products contained (or risked containing) chlormequat, they would not have purchased the Products or paid a premium price.

74. Defendant's omissions and other deceptive conduct caused Plaintiff and the New York Subclass to suffer injury in the form of actual damages when they purchased the Products that were worth less than the price paid and that they would not have purchased at all had they known the Products contained (or risked containing) dangerous chlormequat.

75. Defendant knowingly made material omissions on its packaging for the Products to Plaintiff and the New York Subclass at the time they purchased the Products, including the fact that Defendant's products contained (or risked containing) dangerous chlormequat.

76. As a direct and proximate result of these violations, Plaintiff and the New York Subclass have been harmed, and that harm will continue until Defendant is enjoined from further omitting the truth about the Products, that they contain (or risk containing) dangerous chlormequat.

77. Pursuant to GBL § 350-E, Plaintiff, on behalf of himself and the New York Subclass, seeks injunctive and declaratory relief, as well as actual damages or $500 (whichever is greater), and statutory damages of three times the actual damages (up to $10,000) due to Defendant's willful and/or knowing violations, and attorneys' fees.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

78. Plaintiff, individually and on behalf of the Class, repeats and re-alleges the allegations contained in paragraphs 1 through 33 as though fully set forth herein.

79. Plaintiff and the Class members conferred a monetary benefit on Defendant. Specifically, they purchased the Products from Defendant and provided Defendant with their monetary payment. However, in exchange, Plaintiff and the Class members received from Defendant goods that contained (or risked containing) dangerous chlormequat through material omissions.

80. Defendant knew that Plaintiff and the Class members conferred a benefit on them and accepted or retained that benefit. Defendant profited from Plaintiff's purchases and used Plaintiff and the Class members' monetary payments for business purposes.

81. Defendant failed to disclose to Plaintiff and the Class members that its Products contained (or risk containing) dangerous chlormequat.

82. If Plaintiff and the Class members knew that Defendant's Products contained (or risked containing) dangerous chlormequat as alleged herein, they would not have purchased the Products or would have paid less for them than they did.

83. Plaintiff and the Class members have no adequate remedy at law.

84. Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and the Class members conferred on it.

85. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and the Class members, proceeds that they unjustly received from

them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and the Class members overpaid.

## V. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court:

a) Certify the Class, and appoint Plaintiff and his counsel to represent the Class;

b) Find that Defendant engaged in the unlawful conduct as alleged herein;

c) Enjoin Defendant from engaging in such conduct and order any further declaratory and/or injunctive relief as appropriate;

d) Enter a monetary judgment in favor of Plaintiff and the Class to compensate them for the injuries suffered, together with pre-judgment and post-judgment interest, statutory and punitive damages, and penalties where appropriate;

e) Require Defendant to rectify all damages caused by its misconduct;

f) Award Plaintiff and the Class reasonable attorneys' fees and costs of suit, as allowed by law; and

g) Award such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 11, 2024

Respectfully submitted,

*/s/ Janine L. Pollack*

Janine L. Pollack
Lori G. Feldman
**GEORGE FELDMAN MCDONALD, PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151

Phone: (917) 983-2707
Fax: (888) 421-4173
Email: jpollack@4-justice.com
Email : lfeldman@4-justice.com
Emial : Eservice@4-justice.com

David J. George
Brittany Sackrin
**GEORGE FELDMAN MCDONALD, PLLC**
9897 Lake Worth Road, Suite 302
Lake Worth, Florida 33467
Phone: (561) 232-6002
Fax: (888) 421-4173
Email: DGeorge@4-justice.com
Email: BSackrin@4-justice.com
Email: EService@4-justice.com

Rebecca A. Peterson
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South
Suite 2200
Minneapolis, Minnesota 55401
Phone: (612) 339-6900
Fax: (612) 339-0981
Email: rapeterson@locklaw.com

*Counsel for Plaintiff*